UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EASTERN COMPUTER EXCHANGE, INC., <br><br> *Plaintiffs*, <br><br> *v.* <br><br> AUSTIN KING and PETER BONAVENTURA, <br><br> *Defendants*. | Civil No. 22cv480 (JBA) <br><br> July 7, 2022 |

**RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Eastern Computer Exchange, Inc. instituted this lawsuit in state court on March 10, 2022, seeking a preliminary injunction requiring Defendants to desist their employment with Presidio, which Plaintiff sees as its competitor. (Appl. For Inj. Relief & Verified Compl. ("Appl.") [Doc. # 4].)  After Defendants removed the case to federal court [Doc. # 1], the Court held an evidentiary hearing on June 1, 2022 [Doc. # 42]. Thereafter, the parties submitted post-hearing briefing detailing their respective arguments defending and opposing Plaintiff's motion for a preliminary injunction. (*See* Pl.'s Mem. of L. in Supp. of Pl.'s Appl. for Inj. Relief ("Pl.'s Mem.") [Doc. # 43]; Defs.' Post-Hr. Brief (Defs.' Mem.") [Doc. # 44].) For the following reasons, Plaintiff's motion for a preliminary injunction is DENIED.

**I.    Findings of Fact**

Plaintiff Eastern Computer Exchange, Inc. is an eighty-person company that designs and implements IT solutions for its customers, who are businesses in need of technical hardware and software. (Prelim. Inj. Hr. Tr. ("Tr.") [Doc. # 42] at 10:19-20, 11:18-25, 12:1-5.) Plaintiff is what is known in the information technology industry as a "value-added reseller." (*Id.* at 32:1-4.) Plaintiff acts as a "middleman" between its customers and third-party suppliers by sourcing (in other words, reselling) to its customers IT equipment

manufactured by those suppliers at a preferred price—making a profit on the difference between the preferred price it pays the supplier and the price it charges the customer for the equipment. (*Id.* at 11:5-10, 13:9-10, 32:5-12.) For Plaintiff to gain preferential pricing from suppliers, Plaintiff consults with a customer to form a mutual understanding about the hardware or software the customer will need for a particular project, then Plaintiff submits a "deal registration" with a supplier specifying the needed hardware and software, thereby giving the customer the option of purchasing the products upon approval of the deal registration. (*Id.* at 138:6-16, 139:7-20.)

Defendants King and Bonaventura began their employment with Plaintiff at different times and served different roles. King first started as a summer intern while he was still enrolled as a college student and was eventually promoted to commercial sales representative. (*Id.* at 109:12-20, 110:18-20.) In his role as a commercial sales representative, King sold IT hardware from suppliers, such as VMWare, Dell and Virtustream, to Plaintiff's customers Henry Schein, Estee Lauder, Shearman & Sterling, Barnes & Noble, Bank of China, and Radial. (*Id.* at 111:9-16; 112:18-24, 114:19-22.) Bonaventura began working for Eastern in January 2021 as an Account Executive. (*Id.* at 82:20-23.) Bonaventura's job required him to resell Dell and VMWare's physical hardware and software to Plaintiff's customer Quest Diagnostics. (*Id.* at 85:14-22, 107:20-108:2.)

When Defendants were hired, each signed an employment agreement ("Agreement") containing, among other things, a non-compete provision. (Appl. [Doc. # 4] Count One ¶ 7, Count Two ¶ 7.) This provision of the Agreement provides:

> Employee agrees not to, directly or indirectly, enter into, or in any manner take part in the following activities:
>
> > **i. Employment**: Work for on behalf of a similar business, profession, or other endeavor that competes with Eastern during the course of employment and for a period of one (1) year thereafter, throughout the United States.

> **ii. Customers**: Solicit the trade or patronage of any customers or prospective customers or suppliers of Eastern with respect to any technologies, services, products, trade secrets, or other matters in which Eastern is actively involved or becomes involved during the term of Employee's employment with Eastern and for one (1) year thereafter; or
>
> **iii. Competitors**: Engage in any business or employment, or aid or endeavor to assist any third party, which is in competition with the products and/or services of Eastern during the term of Employee's employment with Eastern and for one (1) year thereafter.

(Employment Agreement, Pl.'s Ex. B [Doc. # 43] at 3.)

At some point, although at different times, Defendants were individually recruited by Presidio, another technology reseller that competes with Plaintiff. (Tr. at 122:9-19.) Disgruntled by unexplained and persistent delays in their compensation, their fears that Plaintiff was losing important business, and their perceptions that Plaintiff engaged in unethical conduct, (*id.* at 92:2-17, 122:17-123:3), Defendants accepted positions with Presidio.

King began his employment at Presidio as an Account Manager February 22, 2022. (*Id.* at 123:20-124:14.) As an Account Manager, King assists Presidio's customers with modernization and migration into the cloud and provides "managed services" which he describes as Presidio's ability to "do the work as opposed to hiring technical people in-house to do certain duties." (*Id.* at 123:22-124:14, 126:7-14.) King's customers at Presidio are different than those for whom he provided services as Plaintiff's employee. At Presidio, King's customers are in the financial services sector, and require cloud migration, security, and managed services—rather than the networking equipment King sold for Plaintiff. (*Id.* at 112:13-17, 125:20-126:6.) Although King testified that since starting his current job he has not contacted, solicited, or provided services for any of Plaintiff's customers or used any confidential information he learned, (*id.* at 127:24-128:1, 128:21-23), he communicated with

Terrence Nash, a Dell representative and a relationship King acquired as Plaintiff's employee, about a potential opportunity with BlueCrest Capital ("BlueCrest"). (*Id.* at 128:2-8.) Nash provided contact information for individuals at BlueCrest and King contacted at least one of these individuals. (*Id.* at 132:18-133:1, 137:4-10.) King pursued BlueCrest because BlueCrest has never been Plaintiff's customer, nor has Plaintiff ever attempted to acquire BlueCrest as a customer through Nash or independently. (*Id.* at 128:9-14.) King also testified that he has spoken with seven other individuals working for various suppliers whose products Plaintiff has sold to its customers. (*Id.* at 134:18-25; 135:1-25; 136:1-3.)

In mid-March 2022, Bonaventura began his employment at Presidio as a Client Executive. (*Id.* at 96:7-24.) King was not involved in Bonaventura's recruitment to Presidio. (*Id.* at 95:12-23.) Bonaventura's new role requires him to work with Presidio's customers on application development within the cloud, which is a "unique niche market that only a very, very small number of providers are capable of offering that service." (*Id.* at 96:11-14.) Barry Williams, one of Plaintiff's two chief executive officers, testified that Plaintiff does not compete with Presidio in cloud application development. (*Id.* at 48:23-49:3.) Nor does Bonaventura's job at Presidio require him to service any of the same clients or work with the same suppliers that he encountered during his employment with Plaintiff. (*Id.* at 97:3-9.) Bonaventura testified that he has also not used any confidential information from his employment with Eastern. (*Id.* at 97:23-25.)

Although Defendants were aware of the terms of the employment agreements they signed when their employment with Plaintiff began, Defendants did not consider their employment with Presidio to be in violation of the Agreement. (*Id.* at 86:8-12, 106:20-22, 125:16-19.) Disagreeing with that assessment, Plaintiff has commenced this lawsuit and claims that its "total out-of-pocket losses due to Peter Bonaventura's alleged breach of the

4

non-compete and non-solicitation clauses are $2,037,249.75," and $1,250,304.72 for King's alleged breach. (Williams Decl. [Doc. # 30] at 4, 6.)

## II.   Standard of Review

A preliminary injunction is "an extraordinary remedy never granted as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)), that district court have broad discretion to grant or deny. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). In the Second Circuit, district courts generally may grant preliminary injunctions after application of a four-part test. *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010). First, the plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). Second, the plaintiff must demonstrate "that he is likely to suffer irreparable injury in the absence of an injunction." *Salinger*, 607 F.3d at 80. Third, "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Id.* "Finally, the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Id.* (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## III.   Discussion

Arguing that Defendants' employment with Presidio is a violation of the non-compete clause in the Agreement, Plaintiff seeks a preliminary injunction to stop Defendants from working there. "Given the nature of the trade secrets Defendants possess, the position they hold with Presidio, and the potential competitive value of Eastern's trade secrets to Presidio," Plaintiff argues, "it is inevitable that Defendants will use, disclose, and otherwise

5

misappropriate Eastern's trade secrets in violation of his confidentiality obligations." (Pl.'s Resp. at 6.) In opposition, Defendant argues that Plaintiff cannot demonstrate irreparable harm and, in any event, it seeks to enforce an unreasonable non-competition clause.[1] (Defs.' Resp. at 4-5, 7.)

Plaintiff's success at this stage depends substantially on its ability to establish irreparable harm, for that element is "'the single most important requisite for the issuance of a preliminary injunction.'" *Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018) (summary order) (quoting *Bell & Howell Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983)). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal citation and quotation marks omitted). A court may not "presume" that a plaintiff will suffer irreparable harm; instead it must assess the injury likely to occur absent a grant of relief and pay "particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger*, 607 F.3d at 80 (quoting *eBay, Inc.*, 547 U.S. at 390). Nor is a mere possibility of irreparable harm sufficient for a preliminary injunction to issue. *Winter*, 555 U.S. at 22.

Plaintiff's prayer for relief falters from the start because it has failed to establish that it will suffer irreparable harm from Defendants' ongoing employment at Presidio. Plaintiff's claimed harm takes two forms—money damages and the exposure of its trade secrets. As an

---

[1] Plaintiff maintains that its Agreement is valid as written, but also asks the Court to apply the Connecticut "blue pencil" rule to modify the Agreement by adding language to the non-compete provision that effectively limits its breadth. (Pl.'s Mem. at 11-12.) Defendants urge the Court to reject Plaintiff's application of the blue pencil rule as at odds with Connecticut state court precedent. (Def.'s Resp. at 11-12.) The Court need not resolve this dispute in light of its determination as to Plaintiff's showing of irreparable harm.

initial matter, Plaintiff has established that a successful claim in this case may entitle it to more than $3,000,000 in damages. (*See* Williams Decl. [Doc. # 30] at 4, 6.) The potential for monetary relief does not satisfy the irreparable harm element, but instead militates against the provision of injunctive relief.

To salvage its claim of irreparable harm, Plaintiff argues that the revelation of its trade secrets by Defendants is made inevitable by their current employment with Plaintiff's competitor, Presidio. (Pl.'s Mem. at 6.) But the record does not demonstrate that either Defendant's activities at Presidio compete with Plaintiff's business, because there is no overlap in Defendants' clients, industries served, or services provided. Defendants work with Presidio's customers to provide cloud services, business for which Plaintiff does not credibly compete with Presidio. (Tr. 48:23-49:3, 96:7-24, 123:22-124:14.) Nor has Plaintiff submitted evidence that Defendants possess trade secrets beyond an assertion that the length and nature of their work gave them access to Plaintiff's "highly sensitive trade secrets and confidential and proprietary information," (Pl.'s Mem. at 7, 9), to which Plaintiff baldly claims Presidio doubled Defendants' salaries to gain access, (*id.* at 17).

Plaintiff presses on, arguing next that King's admission that he contacted the representatives of various suppliers whom he met as Plaintiff's employee demonstrates irreparable harm already inflicted by Defendants' employment at Presidio. Yet Plaintiff has not alleged or proven the loss of any clients or revenues attributable to King's actions or Defendants' employment with Presidio generally.[2] *See William Raveis Mortg., LLC v. Fickeison*, No. FSTCV176031364S, 2017 WL 5164510, at *5 (Conn. Super. Ct. Sept. 13, 2017) (rejecting claim of irreparable harm where the plaintiff provided "no example of even one []

---

[2] Although King leveraged his relationship with one of Plaintiff's suppliers to obtain business for Presidio, it was with a company Plaintiff has never attempted to do business with. (Tr. at 128:9-14.)

customer who was 'lost' as a result of the defendants' conduct"). Contrary to Plaintiff's insistence that the third-party suppliers (from whom Plaintiff buys IT products before reselling them to its customers at an increased rate) are also its customers, Plaintiff's own employment agreement distinguishes between suppliers and customers. (Employment Agreement, Pl.'s Ex. B, at 3, sec. 3, ¶ ii (prohibiting "the trade or patronage of any customers or prospective *customers or suppliers*") (emphasis added).)

Regardless, the identities of the various suppliers that work with Plaintiff to source equipment to its customers are not in and of themselves confidential information or trade secrets. *See BTS, USA, Inc. v. Executive, Perspectives, LLC*, 166 Conn. App. 474, 495-96 (2016) (concluding that the name of a vendor who made packaging was not a trade secret under the Connecticut Uniform Trade Secrets Act). Instead, a customer list, and even a supplier list, may be considered a trade secret if the nature of that information reveals "a substantial element of secrecy . . . to the extent that there would be difficulty in acquiring the information except by the use of improper means." *Robert S. Weiss & Assoc. v. Wiederlight*, 208 Conn. 525, 538 (1988) (citation and quotation omitted). Matters of public knowledge or information that is easily acquired are not trade secrets though. *Id.* And Plaintiff has not persuasively argued that the identities of its suppliers are confidential. Rather, that information and any potential customers Plaintiff may target with the aid of its suppliers appear to be "commercially conspicuous" and any "expenditures of time, money and resources undertaken" by Plaintiff to develop those resources is "merely the outgrowth of . . . normal marketing endeavors." *Delvecchio Reporting Services, LLC v. Edwards*, No. CV166061264S, 2017 WL 3623432 at *6-7 (Conn. Super. Ct. July 13, 2017) (citations and quotations omitted).

Because Plaintiff has failed to carry its burden that it will suffer irreparable harm, it is not necessary for the Court to consider the other elements of the preliminary injunction

standard.[3] *See Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."); *see also Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 228 (D. Conn. 2020) ("In light of the Court's prior findings, the Court need not and will not address the remaining factors for issuing a preliminary injunction.").

---

[3] Although some Connecticut courts have applied a presumption of irreparable harm in matters involving the alleged breach of a non-compete clause, *see A.H. Harris & Sons, Inc. v. Naso*, 94 F. Supp. 3d 280, 299-300 (D. Conn 2015) (collecting cases), the Second Circuit has concluded that courts should not adopt "categorical" rules or presume that a party has met an element of the preliminary injunction standard "in *any* type of case." *Salinger*, 607 F.3d at 78 n.7. The Court recognizes that these different approaches raise a possible tension between federal and state courts that the doctrine of *Erie R.R. Co. v. Tompkins* sought to avoid. 304 U.S. 64 (1938) (identifying a fundamental unfairness when the character and result of litigation materially differ because the suit had been brought in a federal, rather than state, court). The Court applies the Second Circuit's rule, however, because a presumption of irreparable harm does not guarantee either party victory on this motion, or on the merits of Plaintiff's claims. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2943 (1973) (concluding that federal injunction standards "should control" because "the application of the federal rule to requests for preliminary injunctions or temporary-restraining orders would not impair state interests in any substantial way").

Further, the evidence in this case that monetary damages would provide an adequate remedy reinforces the Court's conclusion that it must follow the procedure articulated by the Second Circuit. *See* David E. Shipley, *The Preliminary Injunction Standard in Diversity: A Typical Unguided Erie Choice*, 50 Ga. L. Rev. 1169 (2016) (suggesting that a federal court "may very well refuse to grant an injunction against a misappropriation of trade secrets when damages are shown to be an adequate remedy" to avoid the *Erie* issue posed by state court presumptions about irreparable harm).

## IV. Conclusion

For the forgoing reasons, Plaintiff's motion for a preliminary injunction [Doc. # 4] is DENIED. The parties are directed to file a 26(f) planning report by July 21, 2022.

IT IS SO ORDERED.

                              /s/

                              Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of July 2022